Daniel, Judge
 

 The first n ¡estion arising out of the specia» verdict i„, .vnetuer the power gramou by the charce**
 
 *480
 
 incorporating the company, and giving the right to seise ^.¡1C jJ0aj. js constitutional. We think it is constitutional* The act of 1815, entitled “ an act concerning the navi" gation of Cape Fear river,” changed the name of the “Deep and Haw river Navigation Company,” to that of the “ Cape Fear Navigation Company,” and gave it all the rights, privileges and franchises granted to th
 
 “
 
 Roanoke Navigation Company,” by certain sections of the act of 1812, entitled “an act for improving the navigation of Roanoke river, from the town of Halifax to the place where the Virginia line intersects the same.” The act of 1815, adopts those sections and among them is the eighth, and declares that they shall constitute and form a part of the charter of the “ Deep and Haw river Navigation Company.” By the eighth section of the act of 1812, the Roanoke Company are au-thorised to demand and receive at some convenient place or places, at or near the Falls of Roanoke, for all com modifies transported through any canal, lock, or sluice, made by the said company, tolls according to the following table and rates, &c.” After setting out the table of rates, the section proceeds, “ that if any person or persons, shall refuse to pay the -tolls at the time of offering to pass the places appointed for their collection, and previous to passing the same, the collectors respectively, may lawfully refuse passage to the person or persons so refusing
 
 ;
 
 and if any vessscl shall pass without paying the toll, then the said collectors respectively, may lawfully seise such boat or vessel and sell the same at auction for ready money, after advertising the sale at least ten days,” the money to he first applied to the payment of the tolls and expenses of seisure and sale, and the balance to the owner of the boat. This remedy is given in addition to the personal liability of the owner of the boat, to secure the tolls to the company.
 

 The prosecutor, who was collector of the tolls due the Cape Fear Navigation Company, went in the manner stated in the case, on board of the boat to seise and sell her, according to the directions of the eighth section of the act of 1812, when he was assaulted by the defend
 
 *481
 
 ants and driven from the boat, oa the ground, as they say, that be bad no legal or constitutional authority to seise and sell llie same to pay the tolls, and therefore they made the assault in a necessary defence of their own property, which was about to be. forcibly and illegally taken from them, and that they had no opportunity or right, by the act of 3 812, to contest ihe demands of the prosecutor in any court of justice, We think, the law gave the defendants a right to have the claims of the prosecutor judicially investigated ; they might on the distress being made, have replevied the property, and had the proceedings returned into a court of record, anti had its judgment on the rights of the parties, The writ of replevin is a common law proceeding and may be used in this State, and is a remedy incident to every species of distress without process. St has frequently been used in this, as well as in all the states of the, confederacy, which have adopted the- common law. The objection therefore, that the- property of the defendants might have been taken from them,under the eighth section of the act of 1812, without giving them'an opportunity to defend themselves against any unjust claims for tolls, is not tenable and will not avail in this case.
 

 A power of distress given a navigation company upon a refusal to pay their tolls is constitutional, the action of replevin being a remedy for its abuse.
 

 The .second ground of defence is, that the demand of tolls could not be made ón the. Capo Fear river. By the second section of the act of 3 815. the rights, “privileges and franchises of the Deep and Haw river Navigation Company, shall extend from the sources of the several rivers and creeks running into the Capo Fear river, to the mouth of said river.” By the seventh section of the same act, it is declared thus- “And whereas by improving the, navigation of the Cape Fear river, and the various streams that run into the said river, the company will became entitled to tolls'at
 
 different places,
 
 but of unequal amount:
 
 Be it enacted,
 
 that the stockholders, or a majority of thorn, in a general meeting, shall have power to regulate and determine the tolls "which shall he paid, and from time tó time alter the said tolls,”
 

 It appeal's from this section, that the company are to ' be paid tolls; we perceive that there is a navigation corn-
 
 *482
 
 pany formed ; ifc bas rights, privileges and franchises from the sources of the Cape Fear river, to its mouth, the company have a right to regulate and determine by their by-laws, what tolls shall be paid, so as not to exceed fifteen per cent, on their capital stock. This toll is directed by law to be paid. But where arc they to be paid, ask the defendants ? They call our attention to the 8th section of the act of 1812, adopted by the. act of 1815, and say if the collector under this section, sets up a right to seise our vessel, we have a right to say that his demand of toll must he made according to the very same section, “at some convenient place or places, at or near the Falls of Roanoke,” and if a seisure is made before a demand of the tolls shall have been made, at some convenient place near the Falls of Roanoke, it will be illegal and we have a right to resist it. If by adhering to the letter of the act of 1815, with its adopted sections of the act of 1812, wo disappoint the intention of the legislature, and defeat the object contemplated, we may be sure that our construction is improper, but if we place a construction on the act, which will carry the intention of the makers into execution and effectuate the object contemplated, we may be equally sure our construction is right. What was the intention of the legislature ? This is gathered from reading the whole act, as we gather the intention of parties to a deed or oilier written contract, by reading the whole of it.
 
 I
 
 presume the legislature intended by the act of incorporation. to enable the company to raise a capital, by means of which, the river Cape Fear should he made navigable, and that the owners of the capital should ho rewarded for the use of it, by taking at different
 
 “
 
 convenient places,” tolls on vessels and commodities passing along the river, so that the tolls should not exceed fifteen per cent. If the tolls for passing up and down the Cape Fear river, were to he demanded at a place near the falls of Roanoke river, (a distance of nearly one hundred and fifty miles from the Cape Fear river,) before they could he legally collected, the object and intention of the legislature in passing the act of 1815,
 
 *483
 
 would be frustrated. If we were to bold, that thedemand was to be made at or near the Falls of Roanoke, and upon a refusal to pay there, that the vessel and goods should he distrained, on the Cape Fear river, such a construetion would at once be tantamount to a repeal of the law. This act of Assembly not being a penal act, but passed for a purpose highly beneficial to the country, must receive a fair and liberal interpretation. The tolls by the act are to be paid ; and I think they may he demanded at some reasonable and convenient ¡dace near to the place, for the use of which, they became duo. Would it not. be monstrous to tell the debtors for tolls on-the Cape Fear river, that they must go to the collector's office at or near the Fails of Roanoke, to pay them ? I think it equally absurd to require the company to demand its debts due as tolls, from the captains of boats for using the Cape Fear river, at the Fall's of the Roanoke, before a distress for them could be resorted to.
 

 Where there is a saving clause in a statute, which is repugnant to the purview or enacting part of it, it is void. (1
 
 Co.
 
 47.
 
 Plowd.
 
 564. 14
 
 Pelersdorffs Ab.
 
 719, 720.)
 

 The intention is to be collected from the express words of the particular clauses in each statute, and where ihe object and intention is clear, it is not to be defeated, by the letter or wording of any particular clause, for every statute is to be expounded not according to the letter, but the intention of the makers of it.
 
 (Carlen
 
 v.
 
 Chanklin 3 M
 
 &
 
 S.
 
 510. 14
 
 Pelersdorffs Ab.
 
 716.)
 

 It does not apppear from the case, that there is any such place as the Falls of Cape Fear river; the place of collection of the tolls due, must be at some reasonable and convenient place, and it does not appear that the place mentioned in the case, is an improper one.
 

 If the demand of toll could be made at the place mentioned in the case, which I think it might, the next question made by the verdict is, ‘‘could theseisurebemadeon the day succeeding the day of tito demand ?” The answer to the question, appears to me, ought to be in the affirmative. I sec no reason why the boat should not be dis-trained
 
 ihe
 
 next flay, for a debt which she owed for tolls the
 
 *484
 
 day before,which had been tiien demanded and rcfuscd'to be ' paid!
 

 'j'jjg liext quest!:;'! is-
 
 u
 
 could' the scisurc be made after* the boat liad arrived at the wharf ?” By the eighth section of the act of 1812, the collector may refuse the-passage of a boat, upon an omission to pay the tolls demand-but tlic section proceeds, that fii if any vessel
 
 shall pass
 
 without paying the tolls, then the said collectors, respectively, may lawfully seise such boat or vessel1 think it a very convenient time and place for the collector to distrain when the boat came to the wharf certainly it would be as legal to arrest the boat there, as in the stream. After reviewing the whole caso, I think the. judgment of'the Superior' Court should bé reversed, and judgment entered for tin; State.
 

 Feu Curiam. — Judgment Reversed.